UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| CWA LOCAL 3414 – MONROE, CWA LOCAL 3412 – HOUMA, CWA LOCAL 3411 – SHREVEPORT, CWA LOCAL 3410 – NEW ORLEANS, CWA LOCAL 3407 – LAKE CHARLES, CWA LOCAL 3404 – NORTH SHORE, CWA LOCAL 3403 – BATON ROUGE, and CWA LOCAL 3402 – ALEXANDRIA | * * * CIVIL ACTION NO. _____ * * * * * * |
| VERSUS | * DISTRICT JUDGE _____ * * MAGISTRATE JUDGE _____ |
| BELLSOUTH TELECOMMUNICATIONS, LLC | * * JURY DEMAND |

**************************************************************************

## COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF COLLECTIVE BARGAINING AGREEMENT, AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

NOW INTO COURT, through undersigned counsel, come Plaintiffs, CWA Local 3414 – Monroe, CWA Local 3412 – Houma, CWA Local 3411 – Shreveport, CWA Local 3410 – New Orleans, CWA Local 3407 – Lake Charles, CWA Local 3404 – North Shore CWA Local 3403 – Baton Rouge, and CWA Local 3402 – Alexandria (collectively as "CWA Louisiana" or "Plaintiffs"), who bring this civil action against Bellsouth Telecommunications, LLC ("Bellsouth", the "Company", or "Defendant") for declaratory and injunctive relief and allege as follows:

### INTRODUCTION

1. CWA Louisiana, as bargaining agent, entered a collective bargaining agreement with Bellsouth that governs the terms of employment between CWA Louisiana's members and Bellsouth. The collective bargaining agreement requires compliance with state law.

2. Defendant breached the collective bargaining agreement by mandating employee vaccination for COVID-19 (the "Vaccination Mandate") under threat of "disciplinary action, including termination" in violation of Article 1, Section 5 of the Louisiana Constitution, La. Const. art. 1, § 5, which establishes an "affirmative right to privacy" that includes "a right to decide whether to obtain or reject medical treatment." *Hondroulis v. Schuhmacher, M.D.*, 553 So. 2d 398, 415 (La. 1988), *on reh'g* (La. 1989).

3. The Vaccination Mandate requires employees to be "fully vaccinated" by February 1, 2021. To meet the required timeline, employees must receive the first shot of the two-shot Pfizer vaccine by December 28, 2021, or the single-shot Johnson & Johnson by January 18, 2021

**THE PARTIES**

4. Plaintiff, CWA Local 3414 – Monroe, is a local Communications Workers of America chapter in Houma, Louisiana. It is authorized to sue on behalf of its members pursuant to 29 U.S.C. § 185(b). Its office is located at 813 Grammont Street, Monroe, Louisiana 71201.

5. Plaintiff, CWA Local 3412 – Houma, is a local Communications Workers of America chapter in Houma, Louisiana. It is authorized to sue and be sued on behalf of its members pursuant to 29 U.S.C. § 185(b). Its office is located at 106 Westside Boulevard, Houma, Louisiana 70364

6. Plaintiff, CWA Local 3411 – Shreveport, is a local Communications Workers of America chapter in Shreveport, Louisiana. It is authorized to sue and be sued on behalf of its members pursuant to 29 U.S.C. § 185(b). Its office is located at 1200 Marshall Street, Shreveport, Louisiana 71101.

7. Plaintiff, CWA Local 3410 – New Orleans, is a local Communications Workers of America chapter in New Orleans, Louisiana. It is authorized to sue and be sued on behalf of its members pursuant to 29 U.S.C. § 185(b). Its office is located at 837 North Carrolton Avenue, New Orleans, Louisiana 70119.

8. Plaintiff, CWA Local 3407 – Lake Charles, is a local Communications Workers of America chapter in Lake Charles, Louisiana. It is authorized to sue and be sued on behalf of its members. Its office is located at 3409 Hodges Street, Lake Charles, Louisiana 70605.

9. Plaintiff, CWA Local 3404 – North Shore, is a local Communications Workers of America chapter in Mandeville, Louisiana. It is authorized to sue and be sued on behalf of its members pursuant to 29 U.S.C. § 185(b). Its office is located at 68446 Tammany Trace Drive, Mandeville, LA 70471.

10. Plaintiff, CWA Local 3403 – Baton Rouge, is a local Communications Workers of America chapter in Baton Rouge, Louisiana. It is authorized to sue and be sued on behalf of its members pursuant to 29 U.S.C. § 185(b). Its office is located at 2081 Beaumont Drive, Baton Rouge, Louisiana 70806.

11. Plaintiff, CWA Local 3402 – Alexandria, is a local Communications Workers of America chapter in Pineville, Louisiana. It is authorized to sue and be sued on behalf of its members pursuant to 29 U.S.C. § 185(b). Its office is located at 1001 Main Street, Pineville, Louisiana 71360.

12. Defendant, Bellsouth Telecommunications, LLC, is a Delaware limited liability company and wholly owned subsidiary of AT&T, Inc., with its principal place of business in Atlanta, Georgia.  Bellsouth Telecommunications, LLC is authorized to do business in the State

of Louisiana under the trade name of AT&T Louisiana. Its registered agent for service of process is located at 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

## JURISDICTION AND VENUE

13. The Court has federal question jurisdiction over this action pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, to enjoin Defendant from breaching the CBA against CWA Louisiana and its member. 28 U.S.C. § 1331; *see Carpenters Local Union No. 1846 of United Bhd. of Carpenters & Joiners of Am., ALF-CIO,* 690 F.2d 489 (5th Cir. 1982); *United Textile Workers of America, A.F.L. v. Goodall-Sanford, Inc.*, 129 F.Supp. 859 (D. Me. April 1, 1955).

14. Defendant is a foreign limited liability company authorized to do and is actively doing business in Louisiana.

15. Venue is appropriate pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 185 because at least one Plaintiff affected by the Defendant's conduct giving rise to this action is within this division, and Defendant conducts business in this division.

## FACTS

16. Communications Workers of America is a telecommunications and media labor union of employees with AT&T and Bellsouth, Verizon, General Electric, the New York Times, Wall Street Journal, United Airlines, the National Broadcasting Company, the American Broadcasting Company, and others.

17. Communications Workers of America is divided into nine (9) districts. District 3 oversees Alabama, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, Puerto Rico, South Carolina, Tennessee, and the U.S. Virgin Islands.

18. In Louisiana, there are nine (9) local chapters, including Plaintiffs.

19. The local CWA chapters are the bargaining representatives for their members.

### A. The Collective Bargaining Agreement

20. On or about August 4, 2019, CWA Louisiana, through Communications Workers of America, entered into a collective bargaining agreement (the "CBA") with Bellsouth for a 4-year term, through August 3, 2024. The CBA governs the contractual relationship between union members and the Company, providing terms for wages, hours, and working conditions. *See* Exhibit A.

21. Article 22.01 of the CBA requires compliance with federal and state law. *See* Exhibit A at 197. ("In the event any Federal or State Law or regulation or governmental order affects any provision of this Agreement, those provisions so affected shall be made to comply with the requirements of such laws, regulations, or governmental order").

22. Under Article 16.02, questions regarding health and safety "may be made the subject of a grievance but shall not be submitted to arbitration." Exhibit A at 174.

### B. Bellsouth's Vaccination Mandate

23. On or about August 12, 2021, Defendant made CWA Louisiana aware of its "plans" to implement the Vaccination Mandate for all employees and union members.

24. Communications Workers of America met with Defendant at the bargaining table because this new employment condition was of mutual concern to both the company and the Union.

25. After failing to reach an agreement and bargaining to impasse, Defendant implemented the Vaccination Mandate as its "last, best, and final offer" to Communications Workers of America, effective October 1. 2021. The Vaccination Mandate is a subsequent "agreement" between CWA Louisiana and Bellsouth.

26. The Vaccination Mandate requires that employees be "fully vaccinated" on before February 1, 2022. *See* Exhibit B.

27. "Fully vaccinated means two weeks following the final dose of COVID-19" and "will also include future measures authorized by the FDA and recommended by the CDC, e.g., booster shots if so authorized and recommended." *Id.*

28. "Exceptions" are permitted "[w]here prohibited by law" and for "accommodation[s] approved through the [AT&T's] Job Accommodation Group." *Id.*

29. On or before February 1, 2022, employees are required to attest that they have received all required doses and upload a copy of their vaccination card to a specific Bellsouth portal. *Id.*

30. Employees who "who fail to meet that requirement will be in violation of the AT&T Code of Business standards and will be subject to discipline up to and including termination." *Id*.

31. To meet the deadline, employees must receive their first injection of a two-shot dose by December 28, 2021. *See COVID-19 Vaccines that Require 2 Shots*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/second-shot.html (last updated Dec. 3, 2021) ("COVID-19 Vaccines That Require 2 Shots.").

32. In response to the Vaccination Mandate, CWA issued an official statement that it supports *voluntary* vaccination programs but opposes mandatory vaccination as a condition of employment.

33. Bellsouth makes no attempt to explain how vaccination of workers will improve the safety of the work environment for staff.

34. Further, the Vaccination Mandate provides no option for alternatives, such as regular testing and natural immunity.

35. Based upon information and belief, Bellsouth likely implemented the Vaccination Mandate in response to President Biden's demands for private sector support for his pandemic health initiatives. *See* The White House, Remarks by President Biden on Fighting COVID-19 (Sept. 9, 2021), Https://bit/ly/3Ey4Zj6 (announcing "new vaccination requirements" impacting "a total of 17 million workers"), and to comply with the Federal Contractor Mandate under Executive Order 14042, 86 Fed. Reg. 50,985 (published Sept. 14, 2021) and the OSHA Mandate, 29 C.F.R. § 1910.501, *et seq.* (2021).

36. The Federal Contractor Mandate has been enjoined. *See State of Georgia, et. al. v. Biden, et al.*, No. 1:21-cv-163, --- F.Supp.3d ---, 2021 WL 5779939 (S.D. Ga. Dec. 7, 2021) (granting nationwide injunction); *see also*, *State of Louisiana, et al. v. Joseph R. Biden, Jr*, No.1:21-cv-3867, slip op., 2021 WL 5986815 (W.D.La. Dec. 16, 2021) (granting injunction in favor of Louisiana, Mississippi, and Indiana).

*37.* The OSHA Mandate was initially enjoined by the Fifth Circuit in *BST Holdings, LLC, et al v. OSHA, et al,* No. 21-60856, 17 F.4th 604 (5th Cir. 2021) (granting nationwide stay); now consolidated with *In Re: MCP No. 165, Occupational Safety and Health Administration, Interim Final Rule: COVID-19 Vaccination and Testing,* No. 21-7000 (6th Cir.). The stay was vacated by a divided panel of the Sixth Circuit. *In Re: MCP No. 165, Occupational Safety and Health Administration, Interim Final Rule: COVID-19 Vaccination and Testing,* No. 21-7000, --- F.4th ---, 2021 WL 5989357 (6th Cir. Dec. 17, 2021) (vacating stay pending merits determination). The United States Supreme Court granted writs for a pre-merits review, and the matter is docketed for oral argument on January 7, 2022. *See Nat. Fed'n of Indep. Bus. v. Dept. of Labor, OSHA*, No.

21A244, 595 U.S. __, 2021 WL 6061696 (Dec. 22, 2021); *See also Ohio v. Dept. of Labor, OSHA*, No. 21A247, 595 U.S. __, 2021 WL 6061694 (Dec. 22, 2021).

38. On November 30, 2021, OSHA announced that it was moving the deadline for compliance to January 19, 2022. *US Department of Labor extends comment period for COVID-19 vaccination and testing emergency temporary standard,* U.S. DEPARTMENT OF LABOR, OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION (Nov. 30, 2021), https://www.osha.gov/news/newsreleases/national/11302021.

39. On December 20, 2021, Bellsouth issued a notice to its employees regarding the legal status of the OSHA Mandate litigation, stating that it "is enforceable across the U.S., superseding all state and local laws." *See* Exhibit C.

40. Further, Bellsouth warned that "all employees who come into a work location, temporarily work from home or attend a company event—**regardless of state laws**—must be fully vaccinated or have an approved job accommodation by Feb. 1, 2022." *Id.* (emphasis in original).

41. It is unclear whether Bellsouth intends to enforce its own Vaccination Mandate, the OSHA Mandate, or both.

42. Unlike the OSHA Mandate, the Bellsouth Vaccination Mandate does not provide for a testing alternative procedure nor accommodate employees who work remotely.

C. The "Grievance Meeting"

43. On or about December 10, 2021, the grievance process was commenced by an initial meeting between representatives of CWA Louisiana and Defendant, respectively.

44. The initial meeting involved Richard Honeycutt, District 3 Vice President, and Robert Weaver, Communications Workers of America District 3 Counsel, on behalf of CWA; and Dianne Bradley, Labor Vice President, and John Phelan, Labor Counsel, on behalf of Defendant.

45. Honeycutt and Weaver requested exemption for CWA Louisiana members on the basis that the Vaccination Mandate violates the right to refuse medical treatment under Louisiana law and requested initiation of a formal grievance process as provided by Article 21 of the CBA.

46. Defendant's representatives rejected the request for an exemption and declared a formal grievance process "futile" under the circumstances. *See* Exhibit D.

47. Under the Labor Management Relations Act and CBA, this meeting exhausted all contractual settlement regimes available to CWA Louisiana. *See Rabalais v. Dresser Industries, Inc.*, 566 F.2d 518, 519 (5th Cir. 1978) ("No exhaustion is necessary if: (1) the union wrongfully refuses to process the employee's grievance thus violating its duty of fair representation; (2) the employer's conduct amounts to a repudiation of the remedial procedures specified in the contract; or (3) exhaustion of remedies would be futile because the aggrieved [party] would have to submit his claim to a group "which is in large part chosen by the (employer and union) against whom his real complaint is made.") (Citing *Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 331 (1969) (internal citations omitted)).

48. Defendant refused to accept CWA Louisiana members' good faith exception to the Vaccination Mandate without a reasonable justification.

**LOUISIANA'S AFFIRMATIVE RIGHT TO REFUSE MEDICAL TREATMENT**

49. Article 1, Section 5 of the Louisiana Constitution provides: "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." La. Const. art. I, § 5. It has been well-settled for over thirty years that this provision establishes the affirmative right to decide whether to obtain or reject medical treatment, as expressly held by *Hondroulis v. Schuhmacher*, 553 So.2d 398, 414 (La. 1989); *Snider v. Louisiana Med. Mut. Ins. Co.*, 2013-0579, p. 8 (La. 12/10/13); 130 So.3d 922,

930 ("The informed consent doctrine is based on the principle that every human being of adult years and sound mind has a right to determine what shall be done to his or her own body." *See also Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095 (La. 3/10/06); 923 So.2d 627, 635-36 ("Louisiana recognizes the right of an adult to refuse to consent to medical or surgical treatment of his own person.").

50. The "affirmative aspect" of rights under Article 1, § 5 means "the protection goes beyond limiting state action[,]"as explained in *Moresi v. State, DWF*, 567 So.2d 1081, 1093 (1990). *See* John Devlin, *Developments in the Laws*, 1989-1990, 51 LA. L. REV. 295, 299-306 (1990) (explaining that *Moresi* held "for the first time that the protections of section 'go beyond limiting state action' and apply directly to limit invasions of privacy interests by private, non-governmental parties").

51. This is a crucial distinction from the "negative" rights secured by the Federal Constitution, which protects individual liberty by limiting governmental action. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195–96 (1989) (holding that the negative rights under the Due Process Clause do not "impose an affirmative obligation on the State" to protect individuals from harm caused by private actors").

52. The Louisiana Supreme Court has repeatedly emphasized that '[o]ur state constitution's declaration of the right to privacy contains an affirmative establishment of a right of privacy ...' and that this "is one of the most conspicuous instances in which our citizens have chosen a higher standard of individual liberty than that afforded by the jurisprudence interpreting the federal constitution." *State v. Brennan*, 99-2291 (La. 5/16/00); 772 So.2d 64, 71, *quoting Hondroulis*, 553 So.3d at 415, and *State v. Hernandez*, 410 So.2d 1381 (La. 1982); *see also*, *State v. Brignac*, 17-0448 (La. 10/18/17); 234 So.3d 46, 60-61.

53. The right to medical autonomy is codified in multiple state statutes. See La. R.S. 40:1159.7 (Louisiana Medical Consent Law); La. R.S. 17:179(E) (allowing "written dissent" to student vaccination); La. R.S. 17:170.1(C)(1) (allowing "personal reasons" for opting-out of meningitis vaccination); La. R.S. 40:2022 (allowing parents to decline certain vaccines for newborns); *see also*, La. R.S. 40:1151.2 (Louisiana Advanced Directives statute); R. S. 40:1153.2 (Louisiana Military Advance Medical Directive statute); R.S. 40:2010.8(6) (Nursing Home Residents Bill of Rights).

54. Moreover, Louisiana law recognizes a cause of action for invasion of privacy based on the "right to be let alone." *Tate v. Woman's Hosp. Foundation*, 2010-0425 (La. 1/19/11); 56 So. 3d 194, 197 (emphasis added). Violation of this right may occur in multiple ways, including "by unreasonably intruding on [a person's] physical solitude or seclusion" and by the "unreasonable disclosure of private facts." *Id*. The reasonableness of the defendant's conduct is determined by balancing the conflicting interests at stake, the plaintiff's interest in protecting his privacy from serious invasions, and the defendant's interest in pursuing his course of conduct. *Jaubert v. Crowley Post–Signal, Inc*., 375 So. 2d 1386 (La. 1979).

55. Private employer vaccination mandates are presently under challenge in Louisiana courts. *See Theresa M. Nelson, et al. v. Ochsner Lafayette General,* No. C-2021-4858 (15th J.D.C.); and *Jayson Hayes, et al v. University Health Shreveport, LLC, d/b/a Ochsner LSU Health Shreveport and Ochsner LSU Health Shreveport – St. Mary Medical Center, LLC,* No. 633022 – B (1st J.D.C.)

56. In those cases, the trial courts denied injunctive relief and dismissed on exceptions of no cause of action, finding (wrongly) that the right to refuse medical treatment under the

Louisiana Constitution is unenforceable against a private employer. The plaintiffs sought writs and appeals in both proceedings, as well as writs to the Louisiana Supreme Court.

57. On October 28, 2021, the Louisiana Court of Appeal, Second Circuit reversed the trial court's dismissal in *Hayes,* and remanded with instructions to enter a temporary restraining order and docket for a hearing on the motion for preliminary injunction. *See Jason Hayes, et al v. University Health Shreveport, LLC d/b/a Ochsner LSU Health Shreveport and Ochsner LSU Health Shreveport – St. Mary Medical Center, LLC*, No. 54,445, slip op. p. 2 (La. App. 2d Cir. 10/28/21) attached as Exhibit E. That proceeding was stayed pending writs to the Louisiana Supreme Court.

58. On November 17, 2021, the Louisiana Supreme Court granted writs in both proceedings. *Nelson v. Ochsner Lafayette General,* No. 2021-cd-01453, 2021-cc-016101 (La. 11/17/21).

59. The matter was argued before the Louisiana Supreme Court on December 7, 2021, and is under submission.

## COUNT 1: DECLARATORY JUDGMENT

60. Plaintiffs adopt and re-urge the previous allegations.

61. Relief under the Declaratory Judgement Act, 22 U.S.C. § 2201, is generally available in actions brought under Section 301 of the Labor Management Relations Act. 29 U.S.C. § 185(a). *See Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 658 (1998); s*ee also Carpenters Local Union No. 1846 of United Bhd. of Carpenters & Joiners of Am., ALF-CIO v. Pratt-Farnsworth*, 690 F.2d 489, 500 (5th Cir. 1982).

62. CWA Louisiana seeks declaratory judgment that Bellsouth is contractually bound by the CBA to comply with Louisiana's right to refuse medical treatment in the enforcement of the Vaccination Mandate.

## **COUNT II: BREACH OF THE CBA**

63. Plaintiffs adopt and re-urge the previous allegations.

64. Under Section 301 of the LMRA, a lawsuit for violations of a collective bargaining agreement must satisfy three elements: "(1) a claim of violation of (2) a contract, (3) between an employer and a labor organization." *Nat'l Football League Players Ass'n v. Nat'l Football League,* 874 F.3d 222, 2225 (5th Cir. 2017).

65. The CBA prohibits enacting policies that violate its employees' rights protected under state law. Article 22 of the CBA expressly states, "any Federal or State Law or regulation or governmental order affects any provision of this Agreement, those provisions so affected shall be made to comply with the requirements of such laws, regulations, or governmental order." *See* Exhibit A, p. 197.

66. The Vaccination Mandate violates the right to refuse medical treatment under Article 1, Section 5 of the Louisiana Constitution.

67. In accordance with Article 22.01 of the Vaccination Mandate (authorizing exceptions "where prohibited by law"), CWA Louisiana applied for an exception on behalf of its members. *Id.*

68. Bellsouth refused to grant an exception.

69. Bellsouth breached, and continues to breach, the CBA by threatening to discipline employees for exercising a fundamental right provided by state law.

## COUNT III: PRELIMINARY AND INJUNCTIVE RELIEF
## TO FORCE COMPLIANCE WITH THE CBA

70. Plaintiffs adopt and re-urge the previous allegations.

71. CWA Louisiana requests this Court to enter a preliminary injunction and, eventually, a permanent injunction enjoining Bellsouth from enforcing the Vaccination Mandate against CWA Louisiana's members.[1]

72. Under Federal Rule of Civil Procedure Rule 65, a court may issue a preliminary injunction upon notice to the adverse party. Plaintiffs seek expedited consideration for a preliminary and permanent injunction enjoining Bellsouth to the CBA's terms and conditions bargained for between the parties.

73. "A plaintiff seeking a preliminary injunction must clearly show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 457 (5th Cir. 2017). These requirements are satisfied here.

74. CWA Louisiana will prevail on the merits because the Vaccination Mandate expressly threatens disciplinary action against employees who exercise an affirmative right under Louisiana law.

75. CWA Louisiana will suffer irreparable injury from the deprivation of this right. *See Texas Democratic Party v. Abbott*, 461 F.Supp.3d 406, 432 (W.D. Tex. May 19, 2020) ("[T]he violation of a constitutional right for even a minimal period of time constitutes irreparable injury

---

[1] As required by Local Rule 65.1, CWA Louisiana will submit a separate motion and memorandum in support requesting a preliminary injunction.

justifying the grant of a preliminary injunction."). *See also Jurisch v. Jenkins,* 99-0076, p. 4 (La. 1999), 749 So.3d 597, 599 ("A petitioner is entitled to injunction relief without the requisite showing of irreparable [injury] when the conduct sought to be restrained is unconstitutional or unlawful, i.e. when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or a violation of a constitutional right.")

76. The issuance of an injunction poses no injury to Bellsouth because it continues to operate its business with both vaccinated and unvaccinated employees.

77. The public will not be disserved through the issuance of a preliminary injunction.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, CWA Local 3414 – Monroe, CWA Local 3412 – Houma, CWA Local 3411 – Shreveport, CWA Local 3410 – New Orleans, CWA Local 3407 – Lake Charles, CWA Local 3404 – North Shore CWA Local 3403 – Baton Rouge, and CWA Local 3402 – Alexandria, request this Court to enter an order:

> a. For Declaratory Judgment that the Collective Bargaining Agreement requires Defendant to conform the COVID-19 Vaccine Policy to comply with state law;
>
> b. For preliminary and permanent injunctive relief preventing Defendant, Bellsouth Telecommunications, LLC from disciplining Plaintiffs' employee-members for exercising their right to refuse medical treatment, as provided by Louisiana law and made part of the Collective Bargaining Agreement; and
>
> c. Awarding any other and equitable relief including costs associated with this lawsuit as may be just and proper under the circumstances.

Respectfully submitted,

**FAIRCLOTH MELTON SOBEL & BASH, LLC**

By: */s/ Jimmy R. Faircloth, Jr.*_____
       Jimmy R. Faircloth, Jr. (T.A.)(La. #20645)
       jfaircloth@fairclothlaw.com
       Mary Katherine Price (La. # 38576)
       kprice@fairclothlaw.com
       Richard F. Norem, III (La. # 38849)
       enorem@fairclothlaw.com
       105 Yorktown Drive
       Alexandria, Louisiana 71303
       Telephone: (318) 619-7755
       Facsimile: (318) 619-7744

**ATTORNEYS FOR CWA LOCAL 3414 – MONROE, CWA LOCAL 3412 – HOUMA, CWA LOCAL 3411 – SHREVEPORT, CWA LOCAL 3410 – NEW ORLEANS, CWA LOCAL 3407 – LAKE CHARLES, CWA LOCAL 3404 – NORTH SHORE, CWA LOCAL 3403 – BATON ROUGE, and CWA LOCAL 3402 – ALEXANDRIA**